ALLIS-CHALMERS CORPORATION v. RICHARD L. DAVIS, WAYNE L. MORRIS AND GEORGE GLANCE, T/D/B/A HAYWOOD EXCAVATING COMPANY

No. 7730DC519

(Filed 11 July 1978)

1. **Uniform Commercial Code § 46— sale of collateral—inadequacy of price—commercial reasonableness as jury question**

   In N. C. when a debtor offers independent evidence of a gross inadequacy of price received for the collateral, that sufficiently raises the issue of the commercial reasonableness of the sale to take the case to the jury; therefore, in an action to obtain a deficiency judgment for the difference between the amount for which plaintiff creditor sold a backhoe and the amount defendants owed on the backhoe, the trial court erred in directing verdict for plaintiff since the evidence showed that the sale price for the equipment was $3500, but defendant showed that the retail price of a similar machine being sold in the same general locale at the same time was $6500, and a disinterested witness testified that in his opinion the value of the machine was $6500 to $7000 at the time of the sale in that same locality. G.S. 25-9-507(2).

2. **Uniform Commercial Code § 46— sale of collateral—sales price evidence of value—no directed verdict on claim for deficiency**

   Once the secured party makes a prima facie showing that the sale was otherwise "commercially reasonable" under the Code, then the price he actually receives for the collateral must be accepted as competent evidence of the value of the collateral and, therefore, as competent evidence that the price was "commercially reasonable"; hence, the trial court did not err in denying defendants' motion for directed verdict as to plaintiff's claim for deficiency, since the evidence and pleadings established a prima facie showing of conformity with the Code's requirement, thus making the sales price competent evidence of value, and such evidence was sufficient to withstand defendants' motion for a directed verdict and to take the case to the jury.

APPEAL by defendants from *Snow, Judge.* Judgment entered 11 March 1977 in District Court, HAYWOOD County. Heard in the Court of Appeals 29 March 1978.

Defendants purchased from plaintiff's predecessor in interest an Allis-Chalmers 615 loader and backhoe for $14,971.32 on 19 October 1972. Defendants traded a used backhoe and received $4,471.32 credit for it. The balance of $10,500 was financed. A promissory note, security agreement, and financing statement were executed. Occasionally, defendants were late paying and, in July 1974, entirely stopped making payments. Plaintiff repossessed the backhoe on 26 September 1974 because of defendants' default.

At the time of repossession the equipment was carried to Fulmer Equipment Company in Sylva, North Carolina (the dealer who initially sold it). During the early part of October 1974, the backhoe was moved from Fulmer Equipment to Craven Equipment Company in Asheville, North Carolina, because Fulmer Equipment went out of business. On 23 October 1974, Allis-Chalmers Credit Corporation (plaintiff's assignor) notified defendants (1) that a balance of $6,282.64 was owed on the debt and (2) that they intended to sell the equipment at private sale on or after 4 November 1974 unless redeemed. Defendants attempted to redeem the machine, but their check was returned because of insufficient funds.

Craven Equipment, according to defendant Richard Davis's testimony, is an established dealer in heavy equipment. Defendant testified that he himself had previously purchased similar heavy machinery from Craven Equipment and that he had also used their services in selling similar heavy equipment. Plaintiff held the backhoe for sale on the premises of Craven Equipment and enlisted the services of Craven Equipment in its efforts to sell the backhoe. Additionally, plaintiff's assignor circulated in each Allis-Chalmers Credit Company Office throughout the nation a listing of the backhoe, its condition, and price. The asking price was $6,000 to retail customers and $5,000 to wholesale customers. Defendant Davis testified that he sent two prospective buyers who were willing to purchase, but they were unable to locate the machine because it had been moved. Finally, in April 1975, the machine was sold by plaintiff's assignor to Godley Auction Company for $3,500.

Defendant Davis testified that the machine was worth $8,500 in his opinion. Michael Duckett, a disinterested witness, testified that he saw an Allis-Chalmers 615 loader and backhoe on the lot of Godley Auction, about the same time, which he believes was the unit with which this case is concerned. Godley was asking $6,500 for the machine. He believed the value of the backhoe to be $6,500 to $7,000 in that area of the State in the spring of 1975.

Plaintiff filed suit 12 December 1976, seeking a deficiency judgment of $2,651.08, the difference between the amount realized and the amount owed. Defendants answered admitting the debt and other essential allegations but denied any deficiency liability. Defendants also counterclaimed for damages under G.S. 25-9-507 alleging that the secured party did not sell in a commercially reasonable manner. The case was tried before a jury. At the close of all the evidence, the trial court granted plaintiff's motion for directed verdict both as to its claim and as to defendants' counterclaim, and denied defendants' motion for directed verdict. Judgment in the amount of $2,651.08 plus costs was entered in plaintiff's favor 11 March 1977. From that judgment defendants appeal.

*Morris, Golding, Blue & Phillips, by J. N. Golding, for plaintiff appellee.*

*Bennett, Kelly & Cagle, by Robert F. Orr, for defendant appellants.*

MORRIS, Judge.

The first question for decision is whether the sale of the Allis-Chalmers 615 backhoe and loader was commercially reasonable as a matter of law.

G.S. 25-9-504 provides in part that

"(1) [a] secured party after default may sell . . . the collateral
. . . .

\*     \*     \*

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale . . . may be as a unit or in parcels and at any time

and place and on any terms *but every aspect of the disposition including method, manner, time, place and terms must be commercially reasonable. . . .*" (Emphasis added.)

G.S. 25-9-504 also establishes that "unless otherwise agreed, the debtor is liable for any deficiency. . . ." However, in order to recover the deficiency, the creditor must first prove that the disposition of the collateral was commercially reasonable. *Credit Co. v. Concrete Co.*, 31 N.C. App. 450, 229 S.E. 2d 814 (1976). As to all elements of the sale save one there is no question as to commercial reasonableness.

So far as "method", "manner", and "place" are concerned defendant Davis testified that Craven Equipment was a well-known local dealer and that he had previously employed their services in selling similar equipment. He also testified that the same procedures used by Craven Equipment in selling heavy equipment were followed by most equipment dealers. The record does not suggest that the secured party was too hasty in selling the machine; nor does it suggest that there was an unnecessary delay. Therefore, the only issue remaining is whether the "terms" were "commercially reasonable". "Price" is obviously one of the "terms" of the sale. *See Associates Finance Co. v. Teske*, 190 Neb. 747, 212 N.W. 2d 572 (1973). Thus, under *Credit Co. v. Concrete Co.*, plaintiff would have the burden of proving that the price was commercially reasonable in order to be entitled to a deficiency judgment. The trial court directed the verdict as to the claim for deficiency in favor of plaintiff, the party with the burden of proof. In North Carolina, the court can direct the verdict in favor of the party with the burden of proof "only when the evidence presents a question of law based on admitted facts." *Cutts v. Casey*, 278 N.C. 390, 418, 180 S.E. 2d 297, 312 (1971). Neither in the pleadings nor at trial, did defendants admit the commercial reasonableness of the sale. Thus, as a purely technical matter, one can clearly see that the trial court should not have directed the verdict. However, we discuss this issue more fully in order to clarify our holding.

[1] Plaintiff relies heavily upon G.S. 25-9-507(2) which provides that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish

that the sale was not made in a commercially reasonable manner. . . ." Defendants do not argue that the sale was commercially unreasonable because plaintiff should have sold at another time or in a different place. Defendants contend that the sale was commercially unreasonable because the price plaintiff accepted was commercially unreasonable when sold in that manner at that time. G.S. 25-9-507(2) only prohibits second-guessing the secured party; it does not give him unbridled discretion. Obviously, there may be cases in which the price paid for the collateral will be commercially reasonable even though a higher price could have been obtained at a different time or in a different market. Nor do we suggest that a price which is slightly inadequate must necessarily be commercially unreasonable. The trier of fact must consider all the elements of the sale together. However, when the debtor offers independent evidence of a gross inadequacy of price, in North Carolina, that sufficiently raises the issue of the commercial reasonableness of the sale to take the case to the jury.

Plaintiff also places great reliance on the G.S. 25-9-507(2) provision which states that if the secured party "has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. . . ." The sale of a single unit cannot be "in conformity with reasonable commercial practices among dealers" when the sale is for a commercially unreasonable price. In short "reasonable commercial practices" necessitates a commercially reasonable price. Again, we do not think that G.S. 25-9-507(2) makes every inadequacy in price, however slight, commercially unreasonable. A truly gross inadequacy in price, however, if established by the evidence and believed by the jury, will support a finding that the sale was not "in conformity with reasonable commercial practices among dealers".

It is settled law in North Carolina that, in ruling on a motion for a directed verdict by the party with the burden of proof, the trial court must deny the motion when the evidence is in conflict. The jury, not the judge, must weigh credibility and resolve conflicts in the evidence. *Cutts v. Casey, supra.* In this case the sale price for the backhoe was $3,500. Evidence for defendant showed that the retail price of a similar machine being sold in the same general locale at the same time was $6,500. Witness Michael Duckett, a disinterested person, testified that in his opinion the

value of the machine was $6,500 to $7,000 at the time of the sale in that same locality. This evidence of gross inadequacy in price created a serious conflict in the evidence as to whether the price and, therefore, the sale was commercially reasonable. That conflict must be resolved by a jury. Therefore, the trial court erred in granting plaintiff's motion for a directed verdict as to its claim.

[2]  This appeal also brings before us the question of whether the trial court erred in denying defendants' motion for directed verdict as to plaintiff's claim for deficiency. It is obvious that, in light of *Cutts v. Casey*, the defendants would be granted a directed verdict more readily than plaintiff since they do not have the burden of proof on this issue. However, in ruling upon *their* motion for directed verdict, we must still resolve any discrepancies in the evidence in favor of the plaintiff. The evidence of the plaintiff showed that the sale price was $3,500. Once the secured party makes a prima facie showing that the sale was otherwise "commercially reasonable" under the Code, then the price he actually receives for the collateral must be accepted as competent evidence of the value of the collateral and, therefore, as competent evidence that the price was "commercially reasonable". *See Credit Co. v. Concrete Co., supra; Community Management Association of Colorado Springs, Inc. v. Tousley*, 32 Colo. App. 33, 505 P. 2d 1314 (1973). Indeed, at that point, it may be the best evidence the trier of fact has before it. Because the evidence and pleadings establish a prima facie showing of conformity with the Code's requirement, the $3,500 sales price is competent evidence of the value. This evidence is sufficient to withstand defendants' motion for a directed verdict and to take the case to the jury.

Defendants' appeal also brings before this Court the cross-motions for a directed verdict as to defendants' counterclaim. In passing, we note that defendants' counterclaim is for damages only and that damages is the most to which defendants are entitled since their counterclaim does not allege any bad faith on the part of the purchasers. G.S. 25-9-504(4) and G.S. 25-9-507(1). Insofar as defendants' counterclaim is concerned, defendants have the burden of proving lack of commercial reasonableness. We have fully discussed the conflict in the evidence in earlier parts of this opinion. It is unnecessary to re-hash those issues. Defendants' independent evidence suggesting a gross inadequacy in price is sufficient evidence of commercial unreasonableness to withstand

plaintiff's motion for a directed verdict. Therefore, the court erred in granting plaintiff's motion for a directed verdict.

In a like manner, plaintiff's prima facie showing of conformity with the Code requirements, makes the $3,500 sales price competent evidence. Thus, plaintiff's evidence was also sufficient to withstand defendants' motion for a directed verdict.

Finally, defendants contend that failure of the complaint to allege the asignment of the note/security agreement from Fulmer Equipment to Allis-Chalmers Credit Corporation was a fatal defect and entitled defendants to a directed verdict. First, the note/security agreement, which was incorporated by reference, did suggest that there had been an assignment. Second, the complaint states that under the note/security agreement "the defendants agreed to pay to plaintiff the unpaid balance. . . ." We believe that under our liberal rules of pleading this allegation is sufficient to encompass assignment by the original seller to plaintiff. In any event, the proper procedure for the trial court would be to allow plaintiff permission to amend the complaint to conform with the evidence under Rule 15. *See Reid v. Bus Lines*, 16 N.C. App. 186, 191 S.E. 2d 247 (1972). This assignment of error is overruled.

In this case, because there was a clear conflict in the evidence, the case should have been submitted to the jury, and plaintiff's motion for directed verdict should have been denied. The judgment of the trial court is reversed, and the case is remanded for trial.

Reversed and remanded.

Judges MARTIN and ARNOLD concur.