RESORT REALTY OF THE OUTER BANKS, INC. T/A RESORT REALTY, PLAINTIFF v.
VOLKER BRANDT AND WIFE, EVA BRANDT, DEFENDANTS

No. COA03-464

(Filed 2 March 2004)

**1. Brokers— realtor's commission—breach of good faith**

A realtor seeking to recover a commission under a listing contract need not prove a conspiracy to avoid paying the commission, but must show a breach of the principal's duty to act in good faith towards his agent.

**2. Brokers— realtor's commission—ready, willing and able buyer—tax-free exchange**

The trial court did not err by concluding that a realtor had produced a ready, willing, and able buyer, despite a reference to a section 1031 tax-free exchange in the listing contract, where offers were declined during the listing period because an exchange property could not be found; the property was sold to one of those offerors after the listing period at a lower price but without the commission, resulting in a net benefit to defendant; and the property used for the exchange had been owned by defendant's corporation all along. The exchange provision required defendants to exercise good faith.

**3. Brokers— realtor's commission—origination of sale**

The trial court did not err in an action to collect a realtor's commission by concluding that plaintiff had originated a series of events which, without a break in continuity, resulted in the sale of the property.

Appeal by defendants from judgment entered 3 December 2002 by Judge William C. Griffin, Jr., in Dare County Superior Court. Heard in the Court of Appeals 15 January 2004.

*Gray & Lloyd, LLP, by E. Crouse Gray, Jr., for plaintiff-appellee.*

*Volker Brandt, MD and wife, Eva Brandt, defendants-appellants, pro se.*

TYSON, Judge.

Resort Realty of the Outer Banks, Inc. ("Resort Realty") filed a verified complaint seeking payment of a commission due under an

Exclusive Right to Sell Listing Agreement ("the listing agreement"). Dr. Volker Brandt ("Dr. Brandt") and his wife, Eva Brandt (collectively, "defendants"), appeal from the trial court's judgment finding that they had defaulted under their obligations in the listing agreement and ordering them to pay the commission due in the amount of $45,000.00. We affirm.

## I. Facts

Defendants owned two adjacent oceanfront lots in Dare County, North Carolina ("the property"). After the property was condemned due to beach erosion, defendants decided to relocate to another oceanfront property. In September 1997, Dr. Brandt met with Resort Realty agent Charles Rocknak ("Rocknak") to discuss finding a replacement property. Prior to this meeting, Dr. Brandt had conversations with Billy Roughton, who had offered to buy the property for $290,000.00. Dr. Brandt informed Rocknak of this offer and Rocknak indicated that the offer was too low.

After several discussions, defendants entered into the listing agreement with Resort Realty on 19 September 1997. The listing agreement granted Resort Realty the exclusive right to sell the property for a period of six months, or until midnight 19 March 1998, for a cash price of $450,000.00. Defendants also agreed to pay a commission if the property was sold during a "protection period" of sixty additional days beyond the expiration of the listing period to any person who viewed the property during the exclusive listing period. The listing agreement specifically included a provision that stated, "[t]he sale of this property is subject to a 1031 Tax Free Exchange." *See* 26 U.S.C. § 1031 (2003).

Rocknak attempted to locate a replacement property to comply with the § 1031 Tax Deferred Exchange requirement ("exchange requirement"). He and Resort Realty also marketed the listed property and received numerous offers, all of which were submitted to defendants. After several offers and counteroffers, James M. Rose, Jr. ("Rose") made an offer at the listing price of $450,000.00. Defendants did not accept any of the offers. When Rose inquired of Rocknak regarding the reason for the rejections, he was informed that defendants were unable to find a § 1031 replacement property. Rose contacted Dr. Brandt personally and testified that Dr. Brandt would not directly negotiate with him while the listing contract with Resort Realty was in effect. Rose withdrew his offer on 3 December 1997.

On 12 March 1998, Rocknak received and transmitted to defendant by facsimile another full price offer to purchase from James and Sharon Haskell (the "Haskells"). Dr. Brandt testified that he did not respond to the Haskells' offer because the facsimile was illegible, and Rocknak had not located a suitable replacement property. Defendants began looking to purchase bay front property in Maryland.

The listing agreement expired on 19 March 1998. On 19 March 1998, Rocknak registered a list of interested parties and on 20 March 1998, demanded payment from defendants for the real estate commission. The protection period expired on 18 May 1998. In July 1998, Rose again contacted defendants directly. After negotiations, Rose purchased the property for $425,000.00. Dr. Brandt later completed the § 1031 tax deferred exchange. The replacement property was located in Fairfax County, Virginia, and was owned by a Virginia Corporation, V. Brandt MD, Ltd., Defined Benefit Plan. Dr. Brandt was the sole shareholder of this corporation. Following a bench trial, the trial court entered judgment for Resort Realty for the $45,000.00 commission due from the sale of the property. Defendants appeal.

## II.　Issues

Defendants contend the trial court erred in concluding that: (1) Resort Realty produced a ready, willing, and able buyer despite the agreement's exchange requirement as a condition of sale; and (2) Resort Realty originated a series of events, which resulted in the sale of the property.

## III.　Standard of Review for Non-Jury Trial

In an appeal from a judgment entered in a non-jury trial, our standard of review is whether competent evidence exists to support the trial court's findings of fact, and whether the findings support the conclusions of law. *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001). "The trial judge acts as both judge and jury and considers and weighs all the *competent* evidence before him." *Williams v. Insurance Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975). The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary. *Id.* When competent evidence supports the trial court's findings of fact and the findings of fact support its conclusions of law, the judgment should be affirmed in the absence of an error of law.

## IV.  Performance Under the Contract

[1] A licensed real estate broker is entitled to recover a commission if a binding contract and performance under the contract is established. *Thompson-McLean, Inc. v. Campbell*, 261 N.C. 310, 313, 134 S.E.2d 671, 674 (1964). It is undisputed that the parties executed a valid listing agreement. To determine whether the trial court erred by awarding Resort Realty a commission, we must consider whether Resort Realty performed under the contract.

On appeal, defendants challenge the trial court's conclusion that they "conspired" with Rose to deprive Resort Realty of a commission pursuant to the listing agreement. A plaintiff need not prove a conspiracy not to pay a commission, but must show a breach of the principal's duty to act in good faith towards his agent, the broker. *See* Patrick K. Hetrick, Larry A. Outlaw, and Patricia A. Moylan, *North Carolina Real Estate Manual*, Chapter 8, *Brokerage Relationships* 227 (5th ed. 2004) ("The owner must cooperate with the broker and not do anything to hinder the broker's performance."); *see also* 12 Am. Jur. 2d *Brokers* § 138 (2003) ("Under general agency principles, a principal is subject to a duty to perform the contract made with his or her agent, to exercise good faith toward the agent, and to refrain from unreasonably interfering with the agent's work, and the principal is liable to the broker for a failure to do so."); *Campbell v. Sickels*, 89 S.E.2d 14, 19 (Va. 1955) ("A principal's contractual duty is to compensate his broker for services rendered in accordance with his contract of employment, and so long as the relation of principal and agent exists to exercise good faith toward him."). Because the issue of good faith is discussed within the other issues raised, we incorporate this assignment of error into that discussion.

## A.  Ready, Willing, and Able Buyer

[2] Defendants argue the trial court ignored the exchange requirement when it concluded that Resort Realty produced a ready, willing, and able buyer. We disagree.

"The law is well settled in this jurisdiction that when a broker, pursuant to an agreement with the owner of land, procures a purchaser for his principal's land ready, able and willing to buy the land upon the terms offered, he is entitled to commissions or compensation for his services." *Carver v. Britt*, 241 N.C. 538, 542, 85 S.E.2d 888, 891 (1955).

When the broker's right to his commission is made to depend upon the satisfaction of any condition other than his production of a ready, willing and able purchaser, North Carolina courts require that such a variation from the general rule be clearly expressed. It is important in such situations that a distinction be made between language that imposes a condition which goes to the substance of a contract and language which relates only to its ultimate performance.

*Tryon Realty Co. v. Hardison*, 62 N.C. App. 444, 448, 302 S.E.2d 895, 898 (1983) (internal citations omitted).

"The term 'ready, willing, and able' means that the prospective purchaser desires to purchase, is willing to enter into an enforceable contract to purchase, and has the financial and legal capacity to purchase within the time required on the terms specified by the seller." James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 8-11, at 253 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999) (citing Hetrick and Outlaw, *North Carolina Real Estate for Brokers and Salesmen* (4th Ed., 1994), Chapter 10, *Agency Contracts and Related Practices*). Further, "the purchaser indicates readiness and willingness by executing a valid offer to purchase that either complies with the seller's requirements as set forth in the listing contract or is accepted by the seller." *Id.* Since Rose entered into a contract with defendants and consummated the transaction by purchasing the property, the evidence supports the trial court's conclusion that Resort Realty produced Rose as a ready, willing, and able buyer. *See Carolantic Realty, Inc. v. Matco Grp., Inc.*, 151 N.C. App. 464, 468, 566 S.E.2d 134, 137 (2002).

Defendants argue the trial court did not consider the exchange requirement in making this conclusion. The listing agreement at bar states in Paragraph Nine, "The sale of this property is subject to a 1031 Tax Free Exchange." Defendants contend the exchange requirement included in the listing agreement established a duty on Resort Realty to locate and secure a suitable replacement property before a commission could be earned. We disagree.

The inclusion of the exchange requirement in the listing agreement gave Resort Realty notice that defendants could refuse an offer if a suitable replacement property to fulfill this exchange requirement was not identified or secured. Nothing in the listing agreement placed the duty on Resort Realty to locate and secure the replacement property. The § 1031 exchange provision required defendants to exercise

good faith and reasonable efforts to identify and secure the replacement property. *See Mezzanotte v. Freeland*, 20 N.C. App. 11, 17, 200 S.E.2d 410, 415 (1973), *cert. denied*, 284 N.C. 66, 201 S.E.2d 689 (1974) (By making the condition, the promisor impliedly promises to use good faith and reasonable efforts).

"One who prevents the performance of a condition, or makes it impossible by his own act, shall not take advantage of the nonperformance." *Id.* at 20, 200 S.E.2d at 416 (citations omitted). In October 1997, defendants made an offer through Resort Realty for a replacement property. The offer of $320,000.00, however, was substantially lower than the asking price of $375,000.00. Defendants did not make any other offers on a replacement property during the listing period. After receiving Rose's full price offer in November 1997, Dr. Brandt sent a letter to Rocknak stating that he would accept Rose's offer only if Resort Realty would reduce its commission to a flat fee of $10,000.00. His letter specifically stated, "we could void the existing contract and re-write another . . . and you collect $10,000." Following Rose's withdrawal of his offer in early December 1997, defendants had limited or no contact with Resort Realty.

Rose and Dr. Brandt executed a contract for the purchase of the property in July 1998 for $425,000.00. Based on the terms of this contract, Rose was able to purchase the property for less than his offer in November 1998, and Dr. Brandt was able to secure higher net proceeds by avoiding Resort Realty's commission. The replacement property, eventually identified and used to satisfy the exchange requirement, was land that Dr. Brandt owned and controlled in a corporate capacity during the *entire* existence of the listing and protection periods. Also, as a condition of the sale, Dr. Brandt requested and Rose agreed, to sign an indemnity agreement, wherein Rose would pay the legal fees, costs, and any commission due over $10,000.00 if Resort Realty attempted to collect a commission from the sale.

We hold that the evidence does not support a "conspiracy" finding. "A conspiracy is an agreement between two or more persons to commit an unlawful act or to do a lawful act in an unlawful manner." *Evans v. GMC Sales*, 268 N.C. 544, 546, 151 S.E.2d 69, 71 (1966). Resort Realty produced no evidence to show an agreement to commit an unlawful act. Further, no evidence in the record supports the portion of the trial court's finding that stated, "at the time the Defendants rejected the full price offer that had been submitted by the Haskells, the Defendants had received another offer, being an offer from James

Rose, that had been directly negotiated between the Defendants and James Rose . . . ." Although the evidence shows that Rose and Dr. Brandt engaged in several direct phone conversations during the listing period, the evidence shows that Rose did not make the offer that Dr. Brandt accepted until after the listing and protection periods expired.

The trial court's determination of a "conspiracy" was harmless error, because a valid listing contract existed and the broker performed under the contract. *See Thompson-McLean, Inc.*, 261 N.C. at 313, 134 S.E.2d at 674. The trial court's findings, however, are sufficient to show a lack of good faith by defendants in their control over and acceptance of the exchange requirement in the agreement. Specifically, the trial court made findings of fact that are supported by competent evidence in the record:

39. That upon receipt of the facsimile of the Haskell contract, the Defendant, Dr. Volker Brandt, took no action. Defendants could tell that the written offer sent to them by facsimile was for a purchase price of $450,000.00, but did not contact Plaintiff after receipt of the offer.

40. That numerous conversations ensued between James Rose and the Defendant prior to the expiration of the Exclusive Listing Agreement between the Defendants and the Plaintiff. . . . That the Defendants indicated that they would not enter into a written agreement until the Protection Period of the Exclusive Right to Sell Listing Agreement between the Defendants and Plaintiff had expired.

. . . .

48. That at the time of the transfer of the title to the real property on August 8, 1998, for the Defendants to James Rose, that the Defendants had designated as their replacement property, pursuant to the 1031 tax deferred exchange, only *one* piece of property . . . which such property had been owned since the early 1990s by V. Brandt, MD, Ltd., Defined Benefit Plan, a Virginia corporation.

The trial court, in its discretion, determined what weight to give the replacement property requirement, considered whether defendants exercised good faith in fulfilling this requirement, and made adequate findings of fact to support its conclusions. *Williams*, 288 N.C. at 342, 218 S.E.2d at 371. By failing to exercise good faith, defendants

prevented the performance of the "condition" stated in the listing agreement regarding replacement property. *Mezzanotte*, 20 N.C. App. at 20, 200 S.E.2d at 416. Competent evidence supports the trial court's conclusion that Resort Realty produced a ready, willing, and able buyer. Defendants are prohibited from accepting the benefits derived from their own nonperformance. *Id.*

### B. Procuring Cause of the Sale

[3] Defendants also contend the trial court erred in concluding that Resort Realty originated a series of events, which, without break in their continuity, resulted in the sale of the property. We disagree.

A broker is the "procuring cause" if he originates or sets in motion "a series of events which, without break in their continuity, result in the . . . sale or exchange of the principal's property . . . ." *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 251, 162 S.E.2d 486, 491 (1968). "[O]rdinarily, a broker with whom an owner's property is listed for sale becomes entitled to his commission whenever he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner." *Id.* at 250, 162 S.E.2d at 491.

Here, it is undisputed that Rose inquired of the property through Resort Realty after noticing Resort Realty's "for sale" sign placed in the yard. Rose made several offers to purchase and Dr. Brandt made several counteroffers to sell the property by and through Resort Realty during the listing period. Although the listing agreement and the protection period had expired, the evidence clearly shows that Rocknak and Resort Realty originated the "series of events" that ultimately led to Rose's offer to purchase the property that was accepted by Dr. Brandt. *Id.*

Rose made a full price offer, subject to the exchange requirement in the listing agreement. We previously held that this condition did not impose a duty on Resort Realty to secure the replacement property. After making this full price offer through Resort Realty, Rose had direct contact with Dr. Brandt, withdrew his offer, and later purchased the listed property at a lower price. In satisfying the § 1031 tax deferred exchange, defendants used a property that Dr. Brandt controlled throughout the listing and protection periods. The trial court did not err in concluding that Resort Realty was the procuring cause of the sale of the property. This assignment of error is overruled.

V. Conclusion

"The law does not permit an owner to reap the benefits of the broker's labor without just reward if he has requested a broker to undertake the sale of his property and accepts the results of services rendered at his request." *Id.* The trial court properly considered the exchange requirement and concluded that Resort Realty produced a ready, willing, and able buyer. The trial court also properly concluded that Resort Realty was the procuring cause of the contract and sale of the property between Rose and Dr. Brandt. We affirm the trial court's judgment.

Affirmed.

Judges HUDSON and STEELMAN concur.