COMMERCIAL CREDIT GROUP, INC., Plaintiff v. LELAND BARBER, JR., individually and d/b/a B.M.E. RECYCLING, Defendant

No. COA09-42

(Filed 15 September 2009)

### 1. Uniform Commercial Code— resale of collateral—commercial reasonableness

The trial court did not err by concluding that the auction of a recycler was commercially unreasonable because the creditor was not entitled to a presumption of commercial reasonableness under N.C.G.S. § 25-9-626(a)(1) and the gross disparity between the second resale private price and the creditor's winning bid, which was a direct result of commercially unreasonable advertising methods, demonstrated that the auction price of the recycler was not reasonable.

### 2. Uniform Commercial Code— resale of collateral—deficiency judgment

The trial court did not err by failing to grant a deficiency judgment because the creditor failed to establish any amount that could have been obtained from a commercially reasonable sale of the collateral, and thus, the trial court properly concluded that the collateral was worth at least the amount of the debtor's debt.

### 3. Costs— taxed to creditor—jurisdiction

The trial court did not err by ordering the costs of the action be taxed to the creditor because judgment was entered in favor of the debtor and the trial court had jurisdiction to issue the order.

Appeal by plaintiff from judgment entered 24 September 2008 by Judge W. Russell Duke, Jr., in Pitt County Superior Court. Heard in the Court of Appeals 18 May 2009.

COMMERCIAL CREDIT GRP., INC. v. BARBER

[199 N.C. App. 731 (2009)]

*Robert G. Qulia for plaintiff-appellant.*

*Colombo, Kitchin, Dunn, Ball & Porter, LLP, by W. Walton Kitchin, for defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Plaintiff Commercial Credit Group, Inc. ("Creditor") appeals the trial court's findings and conclusions concerning a non-consumer secured transaction. We affirm.

## I. BACKGROUND

In July 2007, defendant Leland Barber, Jr. d/b/a B.M.E. Recycling ("Debtor"), purchased a Peterson Pacific 5400 heavy duty waste recycler ("recycler") from Pioneer Machinery, LLC ("Pioneer") for $225,000. The recycler, powered by an 860-horsepower Caterpillar engine, grinds logs into wood chips for commercial use. The purchase included two warranties: an extended service agreement for 6,000 hours on the machine and a 5-year limited warranty on the engine. Debtor financed the transaction with a promissory note and security agreement to Creditor with the recycler serving as collateral. Subsection (c)(iii) of section 9 of the parties' security agreement provided:

> Any public sale will be deemed commercially reasonable if notice thereof shall be mailed to Debtor at least 10 days before such sale and advertised in at least one newspaper of general circulation in the area of the sale at least twice prior to the date of sale and if upon terms of 25% cash down with the balance payable in good funds within 24 hours[.]

The recycler ceased operating after six hours of use, and in September 2007, Debtor brought the inoperable recycler to the Pioneer dealership in Glen Allen, Virginia, for warranted repairs. The absence of the recycler eventually resulted in Debtor defaulting on his loan, because he could not generate revenue to make payments. Consequently, Debtor and Creditor both separately and repeatedly encouraged Pioneer to repair the recycler. Pioneer reportedly told Debtor and Creditor on numerous occasions that it would repair the recycler "within a number of weeks or no more than thirty days." In spite of these assurances, the inoperable recycler sat disassembled and unrepaired at Pioneer's dealership through December 2007.

Creditor notified Debtor of his payment default by letters dated 19 and 28 November 2007, and on 28 November 2007, Creditor con-

structively repossessed the recycler. Creditor then mailed Debtor notice on 17 December 2007 that it would conduct a public auction of the inoperable recycler at Pioneer's dealership in Glen Allen, Virginia, on Thursday, 27 December 2007. Debtor's attorney acknowledged receipt of notice by letter dated 20 December 2007.

Creditor placed identical advertisements for the auction of the recycler in two newspapers of general circulation—the Richmond Times-Dispatch of Richmond, Virginia, and The Daily Reflector of Greenville, North Carolina. The ads ran in both papers on Sunday, 23 December 2007, and Thursday, 26 December 2007. Although the recycler had active warranties, Creditor's ads indicated that the recycler would be sold "as-is" with no warranties. Creditor did not place any additional advertisements in advance of the auction in trade magazines or other newspapers, nor did it individually notify any prospective buyers of the recycler.

Creditor conducted the public auction for the recycler at 1 p.m. on Thursday, 27 December 2007. Only one other bidder was in attendance in addition to Creditor. Debtor did not attend the auction. Acting on behalf of Creditor, Commercial Credit Group's Senior Vice President, Mr. Mattocks, offered an opening bid of $100,000. No other bids were offered. As the high bidder, Creditor purchased the disassembled and inoperable recycler, and shipped it to a rental facility in Charlotte, North Carolina, where it was stored for approximately three months in like condition.

Mr. Mattocks testified at trial that Creditor calculated its $100,000 opening bid by determining a wholesale value for the recycler, deducting an estimated $65,000 engine repair cost from the wholesale value, and then deducting the cost of additional mechanical "unknowns" (i.e., possible repairs). Mr. Mattocks stated that additional mechanical "unknowns" included the possibility that some other components of the machine may have been out of service. Creditor did not include the warranties on the recycler in its opening bid calculations.

Debtor owed Creditor approximately $227,017.63 as of the date of auction. After the auction, Creditor deducted the $100,000 net sale proceeds from Debtor's outstanding debt and found that Debtor's total outstanding balance was $128,168.09 as of 28 December 2007. Debtor made no further payments on the loan.

In January 2008, Creditor commenced action against Debtor in Pitt County Superior Court seeking a deficiency judgment against

Debtor in the amount of $128,168.09, plus accrued interest and attorneys' fees. In March of 2008, Creditor sold the still-inoperable recycler to an unrelated third party for $190,000.00 at a private sale.

The matter was heard by the trial court sitting without a jury. Following the trial, the court entered a judgment and order in which it concluded as a matter of law that: (1) Creditor held "a proper and valid security interest in the collateral," (2) Creditor constructively repossessed the recycler because Debtor was in default on the note, and (3) the sale of the recycler at the public auction was not commercially reasonable. As such, the trial court deemed that the price bid at the public auction was fairly worth the debt owed by Debtor, concluded that Creditor was not entitled to a deficiency judgment, and ordered that the costs of the action be taxed to Creditor.

## II. ISSUES

Creditor now raises several issues on appeal, and contends that the trial court erred by: (IV) concluding as a matter of law that the sale of the recycler at the public auction was not commercially reasonable, (V) concluding as a matter of law that the auction value of the recycler was fairly worth the debt owed to Creditor by Debtor, and (VI) ordering the costs of the action be taxed to Creditor. For the reasons stated herein, we affirm.

## III. STANDARD OF REVIEW

From a non-jury trial, " ' "the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." ' " *Willen v. Hewson,* 174 N.C. App. 714, 718, 622 S.E.2d 187, 190 (2005) (citations omitted), *disc. review denied,* 360 N.C. 491, 631 S.E.2d 520 (2006). The trial court's conclusions of law are reviewed *de novo. Id.* "When competent evidence supports the trial court's findings of fact and the findings of fact support its conclusions of law, the judgment should be affirmed in the absence of an error of law." *Resort Realty of the Outer Banks, Inc. v. Brandt,* 163 N.C. App. 114, 116, 593 S.E.2d 404, 408 (2004), *disc. review denied,* 358 N.C. 236, 595 S.E.2d 154 (2004).

## IV.

[1] As to the issue of whether the auction of the recycler on 27 December 2007 was commercially reasonable, Creditor argues that: (A) Creditor was entitled to a rebuttable presumption of commercial

reasonableness under N.C. Gen. Stat. § 25-9-626(a)(1) (2007); (B) the trial court erred in finding that Creditor had not sent Debtor notification of the auction "ten (10) full days prior to the sale of the property"; (C) Creditor's pre-auction advertisements of the recycler were commercially reasonable, and that the trial court erred in finding that the recycler was purchased with an extended warranty; (D) the recycler's inoperable status had no relevance as to the commercial reasonableness of the auction; and (E) the recycler's auction price of $100,000 was an accurate valuation of the collateral, the recycler's being auctioned at a different time or under other conditions would not have changed the outcome of the auction, and Creditor's March 2008 resale of the recycler was not legally relevant. We will address each in turn.

## A. Rebuttable Presumption

Creditor first argues that it was entitled to a rebuttable presumption of commercial reasonableness under N.C.G.S. § 25-9-626(a)(1). We do not agree.

If the amount of a deficiency after the sale of collateral is in question in a secured transaction, "[a] secured party need not prove compliance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue." N.C.G.S. § 25-9-626(a)(1). If this presumption applies, a secured party need not prove compliance with Part 6 as "part of its prima facie case" unless "the debtor or a secondary obligor raises the issue [of compliance.]" N.C. Gen. Stat. § 25-9-626 official cmt. 3 (2007). Where compliance becomes a matter in dispute, "the secured party bears the burden of proving [compliance with Part 6]." *Id.*

Debtor explicitly denied in its answer Creditor's claim of performing a commercially reasonable public auction, and the primary issue at trial was whether Creditor's auction was commercially reasonable. Thus, Creditor's compliance with Part 6 was clearly in issue, and the trial court properly declined to recognize a presumption of commercial reasonableness under G.S. § 25-9-626(a)(1) in Creditor's favor. This assignment of error is overruled.

## B. Ten Full Days' Notice

Creditor next contends that the trial court erred in finding that it had not sent Debtor notification of the auction "ten (10) *full* days prior to the sale of the property." (Emphasis added.) We do not agree.

In a non-consumer transaction, "a notification of disposition sent after default and 10 days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition." N.C. Gen. Stat. § 25-9-612(b) (2007). This rule applies so long as notice is sent in a commercially reasonable manner. N.C. Gen. Stat. § 25-9-612 official cmt. 3 (2007). "[I]n computing the time for the performance of an act or event . . . one of the terminal days is included in the count and the other is excluded, unless there is something to an intention to count only 'clear' and 'entire' days." *Harris v. Latta*, 298 N.C. 555, 556, 259 S.E.2d 239, 240 (1979) (citations omitted).

Here, Creditor sent notification of the 27 December 2007 auction to Debtor on 17 December 2007, and the receipt of the letter was acknowledged by Debtor's attorney. Because there was no clear intent to include the entire tenth day in the language of the loan documents, it follows that Creditor properly sent notification of disposition ten days prior to an auction that took place on the tenth day of the period in question. Therefore, Creditor's notification is presumed reasonable by statute. N.C.G.S. § 25-9-612(b).

However, Creditor's statutory compliance with N.C.G.S. § 25-9-612(b) does not warrant a reversal of the trial court's finding. The fact remains that 17 December 2007 was the day the letter was sent. Had Creditor sent the letter on 16 December 2007, then 17 December would have been a full day of notice rather than a partial day to be included under this State's General Statutes. The trial court therefore was technically correct in finding that Creditor did not send notification ten "full" days prior to the date of sale.

This technicality aside, Creditor fails to cite any authority showing how this notification to Debtor relates to commercial reasonableness,[1] and declines to identify a specific conclusion of law to which this finding correlates. As a result, Creditor's argument as to this issue is abandoned. N.C. R. App. P. 28(b)(6) (2009). This assignment of error is overruled.

### C. Advertisements and Warranties

Creditor claims that the pre-auction advertisements of the auction of the recycler were commercially reasonable. We do not agree.

---

1. Creditor's heading of this argument in its brief purports to tie the trial court's finding to commercial reasonableness.

The Uniform Commercial Code does not define the term "commercially reasonable." *Hodges v. Norton*, 29 N.C. App. 193, 197, 223 S.E.2d 848, 851 (1976). However, N.C. Gen. Stat. § 25-9-627(b) (2007) provides that:

A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

(1) In the usual manner on any recognized market;

(2) At the price current in any recognized market at the time of the disposition; or

(3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

N.C. Gen. Stat. §. 25-9-627(b)(1)-(3); *see Hodges*, 29 N.C. App. at 197, 223 S.E.2d at 851 (public sale of tractor found commercially unreasonable using same criteria under former N.C. Gen. Stat. § 25-9-507(2)).

This test for commercial reasonableness, however, is not exhaustive, and the U.C.C. further requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." N.C. Gen. Stat. § 25-9-610(b) (2007). "When deciding if a sale of repossessed collateral meets the statute[,] the trier of fact must consider all the elements of the sale together." *Don Jenkins & Son v. Catlette*, 59 N.C. App. 482, 484, 297 S.E.2d 409, 411 (1982) (citation omitted). As a result, whether a sale is commercially reasonable is an issue of fact determined "in light of the relevant circumstances of each case." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 722, 329 S.E.2d 728, 730 (1985).

Creditor makes no argument on appeal that the auction of the recycler satisfies the criteria for commercial reasonableness outlined in N.C.G.S. § 25-9-627(b). As a result, we examine the circumstances surrounding the auction in light of the broad requirements of the case law above, and conclude that the content, time, and manner of Creditor's advertising effort were not commercially reasonable.

### Content of the Advertisements

"[P]arties may determine by agreement the standards measuring the fulfillment of the rights of a debtor or obligor and the duties of a

secured party under a rule stated in G.S. 25-9-602[2] if the standards are not manifestly unreasonable." N.C. Gen. Stat. § 25-9-603(a) (2007). Creditor contends that its advertisements were commercially reasonable because it complied with the term of the security agreement which required Creditor to advertise the auction "in at least one newspaper of general circulation in the area of the sale at least twice prior to the date of sale[.]"[3] While Creditor is correct in its assertion that its compliance with this section could demonstrate commercial reasonableness under N.C.G.S. § 25-9-603(a), Creditor may not now use this argument as a shield given that it failed to follow all the terms of the security agreement regarding the sale of the collateral.

Subsection (c)(iii) of section 9 of the security agreement, the same subsection cited by Creditor, provides that the recycler could only be sold to a buyer with "25% cash down with the balance payable in good funds within 24 hours." However, Creditor's advertisements stated that "[Creditor] . . . may in its *sole discretion* require payment in full or a larger percentage of the bid price at the time of the auction[.]" (Emphasis added.) Creditor's representative made the same statement at the opening of the auction.

The parties never agreed that it would be commercially reasonable for Creditor to have "sole discretion" to demand greater than 25% cash down upon sale, and Creditor was not entitled to add terms to the sale unilaterally. It is reasonable to conclude that this breach was far from immaterial, because there may have been buyers willing to bid if only a 25% down payment was required at sale rather than the entire bid price. Consequently, Creditor's breach of the security agreement on this term renders its compliance argument meritless.

Creditor also contends that an extended warranty on the recycler did not exist at the time of auction, and therefore, advertising the recycler "as-is, where-is, without any representations or warranties" was commercially reasonable. The record is clearly contrary.

Mr. Mattocks, Creditor's representative responsible for the ads, testified that he was aware of: (1) a 6,000 hour extended warranty on the recycler that was part of Debtor's purchase invoice, and

2. Section 602 contains a list of sections within Article 9 that may not be waived or altered through agreement by the debtor or obligor. N.C. Gen. Stat. § 25-9-602 (2007). The content of an advertisement for a sale of collateral is not included within any of the listed sections. *See id.*

3. This requirement is contained in subsection (c)(iii) of section 9 of the security agreement.

(2) a 1,970 hour engine warranty that was identified in Debtor's credit application. Thus, Creditor's own witness supports the trial court's finding that the inoperable recycler was covered by at least one warranty.

In light of this testimony, we believe that it was misleading and unreasonable for Creditor to advertise a piece of expensive, inoperable machinery "as-is" when an extended warranty existed at the time of auction that could have defrayed some or all of the costs of repairing the machine. It is common sense that an inoperable piece of machinery with a warranty is more attractive to a potential bidder than an inoperable piece of machinery without one. Accordingly, Creditor's argument that the trial court erred in finding that the recycler was sold with a warranty also fails.

### Time and Manner of the Advertisements

In addition to the insufficient content of the advertisements, Creditor's advertising effort was grossly inadequate and poorly timed.

Though not defined in Article 9, a public sale or disposition "is one at which the price is determined after the public has had a meaningful opportunity for *competitive bidding*." N.C. Gen. Stat. § 25-9-610 official cmt. 7 (emphasis added). " 'Meaningful opportunity' is meant to imply that some form of advertisement or public notice must precede the sale (or other disposition) and that the public must have access to the sale[.]" *Id.* In addition to these general requirements, "the method, manner, time, place, and other terms [of a public sale of collateral] must be commercially reasonable." N.C.G.S. § 25-9-610(b).

The recycler at issue in this case has a narrow commercial use, and as a result, the pool of bidders potentially interested in this equipment was necessarily limited from the outset. This fact was then inexplicably exacerbated by Creditor's decision to run advertisements for the auction in two general circulation newspapers just two days before and one day after the Christmas holiday. Obviously, scheduling a public auction for a highly specialized and expensive piece of inoperable machinery just two days after Christmas would almost certainly not enhance "competitive bidding" under N.C.G.S. § 25-9-610. Perhaps the best evidence of the result of Creditor's decision was that only one other person in addition to Creditor attended the auction.

Creditor was not bound by law or agreement to hold the auction on such an inconvenient date. *See* N.C. Gen. Stat. § 25-9-610 official

cmt. 3 (2007) ("This article does not specify a period within which a secured party must dispose of collateral."). Given the esoteric nature of the recycler and the fact that it was inoperable, Creditor should have chosen a more appropriate date of sale, and tried considerably harder to market the recycler by targeting legitimate prospective buyers. *See, e.g., United States v. Conrad Pub. Co.*, 589 F.2d 949, 954 (8th Cir. 1978) (advertising insufficient where: printing equipment was not promoted in national or regional trade publications; bidders not given enough time to travel; invitations to bid not sent to potential publisher-bidders; and "[o]nly two advertisements were placed in North Dakota newspapers"). Although marketing defective equipment may often be more difficult than marketing functioning equipment, this is still no excuse for putting forth clandestine advertisements that are misleading, obtuse, and targeted to no one during the busiest holiday season of the year.

Therefore, after examining "all the elements of the sale together" in "light of the relevant circumstances" of this case, we believe there is sufficient competent evidence in support of the trial court's findings of fact and conclusion of law that Creditor's auction was not commercially reasonable. *Don Jenkins & Son*, 59 N.C. App. at 484, 297 S.E.2d at 411; *Parks Chevrolet, Inc.*, 74 N.C. App. at 722, 329 S.E.2d at 730. These assignments of error are accordingly overruled.

### D. Recycler's Inoperable Status

Creditor next argues that the recycler's inoperable status had no relevance as to the commercial reasonableness of the auction. However, Creditor failed to assign error to any part of the record as to this issue, and this argument is therefore abandoned. N.C. R. App. P. 28(b)(6).

### E. Auction Price and Resale

Creditor contends that the recycler's auction price of $100,000 was an accurate valuation of the collateral. We do not agree.

We recognize "[t]he fact that a greater amount could have been obtained" by a disposition occurring "at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing" that the disposition "was made in a commercially reasonable manner." N.C.G.S. § 25-9-627(a). However, while this provision hinders "second-guessing" the secured party subsequent to a sale of collateral, "it

COMMERCIAL CREDIT GRP., INC. v. BARBER

[199 N.C. App. 731 (2009)]

does not give him unbridled discretion." *Allis-Chalmers Corp. v. Davis*, 37 N.C. App. 114, 118, 245 S.E.2d 566, 569 (1978) (applying former N.C.G.S. § 25-9-507(2)).

This Court has identified three factors to be considered in determining the commercial reasonableness of the resale price of collateral: "(1) the price reflected by price handbooks, (2) the fair market value of the collateral, and (3) the price received on a second resale.[4]" *Fritts v. Selvais*, 103 N.C. App. 149, 152, 404 S.E.2d 505, 507 (1991) (citations omitted). "While not itself sufficient to establish a violation[,] . . . a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable." N.C.G.S. § 25-9-627 official cmt. 2.

Since Creditor offered no evidence of the recycler's price as reflected by price handbooks or fair market value at trial, we are left only with Debtor's purchase price of $225,000 and the recycler's second resale price of $190,000 to gauge the commercial reasonableness of the recycler's resale price at auction. Assuming that Creditor's estimated $65,000 engine repair cost was accurate, deducting this amount from the initial purchase price of $225,000 brings the estimated value of the recycler down to $160,000.

At trial, Mr. Mattocks cited mechanical "unknowns" as a possible source for the $60,000 discrepancy between the $160,000 estimated value of the inoperable recycler and Creditor's actual opening bid. However, even if "unknown" repairs would have actually cost $60,000, those repairs were apparently not a factor in Creditor's private sale in March 2008 where the recycler sold for $190,000. Under careful scrutiny, the gross disparity between the second resale private price and Creditor's winning bid, which was a direct result of commercially unreasonable advertising methods discussed *supra*, demonstrates that the auction price of the recycler was not reasonable.[5] Therefore, there was competent evidence in support of the trial court's determination that the auction was commercially unreasonable. *Brandt*, 163 N.C. App. at 116, 593 S.E.2d at 408. These assignments of error are overruled.

---

4. Because the third factor requires this Court to examine Creditor's second, private resale of the recycler, we will not address Creditor's argument that the March 2008 resale of the recycler is not legally relevant.

5. This conclusion also disposes of Creditor's argument that auctioning the recycler at a different time or under other conditions would not have changed the outcome of the auction.

V.

**[2]** Creditor next argues that the trial court erred by not granting a deficiency judgment. We do not agree.

When a secured party sues for a deficiency judgment and compliance with Part 6 is in issue, the secured party has the burden of proving that the disposition of the collateral was conducted in a commercially reasonable manner. *See* N.C.G.S. § 25-9-626(a)(2). We have already concluded that Creditor failed to meet this burden, and that the disposition of the recycler at auction was commercially unreasonable.

If a secured party does not prove the sale to be commercially reasonable, then

> a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:
>
> a. The proceeds of the collection, enforcement, disposition, or acceptance; or
>
> b. The amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance.

N.C.G.S. § 25-9-626(a)(3)(a)-(b). In other words, a presumption in favor of a debtor arises that a commercially reasonable disposition would have yielded a price equal to the debt plus expenses and attorney's fees, unless the creditor "proves that the amount is less than that sum." N.C.G.S. § 25-9-626(a)(4) official cmt. 3 ("[D]ebtor or obligor is to be credited with the greater of the actual proceeds of the disposition or the proceeds that would have been realized had the secured party complied with the relevant provisions."). "[A] secured party may not recover any deficiency unless it meets this burden." N.C.G.S. § 25-9-626 official cmt. 3.

Under N.C.G.S. § 25-9-626, Creditor had the burden of proving that a commercially reasonable sale would have yielded a smaller amount than Debtor's outstanding debt at trial, and Creditor failed to establish any amount that could have been obtained from a commercially reasonable sale. Accordingly, the trial court properly concluded that the collateral was worth at least the amount of Debtor's debt, and

that Creditor is entitled to no deficiency judgment. This assignment of error is overruled.

[3] Creditor lastly contends that the trial court erred in ordering the costs of the action be taxed to Creditor. We do not agree.

Section 6.1 of North Carolina's General Statutes "establishes the general rule that costs may be allowed to the party in favor of whom judgment has been awarded." *Cail v. Cerwin*, 185 N.C. App. 176, 187, 648 S.E.2d 510, 517 (2007) (citations omitted). Here, the trial court explicitly ordered that Creditor "have and recover nothing from [Debtor] . . . and that the costs of [the] action be taxed to [Creditor]." There is nothing to suggest that the trial court lacked jurisdiction to issue such an order, and we find no reason to disturb the trial court's judgment. This assignment of error is overruled.

Affirmed.

Chief Judge MARTIN and Judge STEPHENS concur.