GABRELL *et al.* v. BYERS.

No. 9733. NOVEMBER 15, 1933. REHEARING DENIED JANUARY 1, 1934.

*Len B. Guillebeau,* for plaintiffs in error.

*S. B. Wallace* and *Beck, Goodrich & Beck,* contra.

RUSSELL, C. J. The following contract was entered into on December 22, 1932, between Mrs. Zona Byers of the one part, and Mrs. S. S. Gabrell and S. S. Gabrell, of the other part:

"This memorandum of agreement witnesseth: 1. That Mrs.

Zona Byers, of Spalding County, Ga., hereinafter called the seller, hereby agrees to sell to Mrs. S. S. Gabrell and S. S. Gabrell, of Fulton County, Georgia, hereinafter called the purchasers, for the principal sum of ten thousand dollars, the following described property, to wit: All that tract or parcel of land lying and being in Cabin District (490th G. M.) of Spalding County, Georgia, containing 352 acres, more or less, and being all of land lot number 40, the north part of land lot number 25, and the southwest corner of land lot number 39, all in one body and bounded as follows: north by D. L. Patrick estate (now Horace Fletcher), east by lands of Mrs. J. E. Wallace, the public road, and lands of G. W. Cochran; south by lands of L. L. Colwell, and west by lands of T. Walter Futral. This is the same tract of land deeded to Mrs. Zona Byers on Aug. 23, 1930, and recorded in book 63, folio 37, clerk's office for Spalding County, Ga. Also the following personal property (all now on above farm) : 6 mules, 7 cows, 2 hogs, all farming tools, all chickens, 3 wagons, 1 Chevrolet truck, 2 wheelbarrows, 5 gasoline engines, 1 pea-thrash, 1 grist-mill, all corn, hay, and feedstuffs, all farming implements. 2. The terms of sale are as follows: $1750 to be paid in cash on or before the 1st day of February, 1933; and five notes secured by a first purchase-money security deed on all of the above property, said notes being for $1650 each, and bearing interest at 7% per annum from Feb. 1, 1933, until paid, and purchaser shall have the right to pay any or all the balance purchase-money when they desire. The said five purchase-money [notes] shall become due on 1st day of February of each year thereafter, the first note being due on or before Feb. 1, 1934. All instruments to be in form and embodying terms as required by the seller. 3. The purchasers agree to keep all buildings insured with mortgage loss payable in favor of the seller, the seller to hold the insurance policies until all purchase-money is paid. No timber is to be cut and sold by purchasers. Possession of the premises to be delivered when the first payment is made. 4. Should either party to this contract fail to comply with all the terms of same, the other party shall have the right to cancel same or compel specific performance, or sue for liquidated damages. In witness thereof the parties to this contract have hereunto set their hands and affixed their seals this the 22nd day of December, 1932. (In duplicate.)"

Upon the failure of the purchasers, Gabrell and his wife, to make

the initial payment of $1750 on February 1, 1933, the vendor, Mrs. Zona Byers, filed a petition praying that a decree for specific performance of the contract be entered in her favor, with judgment against the purchasers for the amount of the first payment, with a first purchase-money security deed to secure the remaining payments as they matured. The defendants filed a general demurrer stating that the petition set forth no cause of action. Thereupon the plaintiff filed an amendment to so much of the petition as related to the personal property involved in the contract, as follows: "That the personal property described in said contract, to wit: six mules, seven cows, two hogs, all farming tools, all chickens, three wagons, one Chevrolet truck, two wheelbarrows, five gasoline engines, one pea-thrasher, one grist-mill, all corn, hay, and all feedstuff, and all farming implements, were on said described farm on the 22nd day of December, 1932, when said contract was made, and are still on said farm, and embrace all of the mules, cows, hogs, farming tools, chickens, wagons, trucks, wheelbarrows, gasoline engines, all thrashers, grist-mills, corn, hay, feedstuffs, and farming implements on said farm. Petitioner further alleges that there are no other items of personal property that correspond with said description; and that said description specifically identifies the various items which are the only items on said farm, corresponding to said description." The court allowed the amendment, and overruled the demurrer, and the defendants excepted.

As a general rule, the remedy of a decree for specific performance relates only to real estate, and is not applicable to personalty. So the cardinal rules which apply to the remedy of specific performance are applied with greater strictness where personalty is concerned than where realty is involved. In the case at bar the contract, including both real estate and various species of personal property, is entire and indivisible, so far as the remedy by decree for specific performance is concerned. There seems to have been no question that the land to be purchased by the respondents is sufficiently described; but if the remedy afforded by a decree for specific performance is the right of the plaintiff in this case, it must include the personalty as well as the real estate, for there is no stipulation or statement in the contract from which the valuations of the real estate and the personal property can be ascertained. The total purchase-price is $10,000, but it can not be as-

certained from the contract whether the vendor would have sold the land unless the sale included likewise the personal property, or whether the purchaser would have purchased any of the personal property unless the transaction had included the realty. For this reason, the question as to whether the contract can be enforced by a decree for specific performance must be determined by the issue as to whether a decree for specific performance of the bargain as to the personalty can be enforced by a decree for specific performance, if there were no real estate involved in the transaction. We are of the opinion that the contract, so far as it relates to the personalty is too vague and indefinite, too uncertain, and so incapable of identification, as not to be the subject of specific performance. We find numbers of cases where specific performance has been decreed where the description of land was meager, but where by the aid of extrinsic proof the description in the contract could be easily applied to the subject-matter and all possible doubt removed as to the exact property referred to by the contract. We are aware of numerous cases where the description of mortgaged property has been held to be sufficient where any ambiguity could readily be removed by extrinsic proof. Among them may be mentioned *Nichols* v. *Hampton,* 46 *Ga.* 253, to which reference has several times been made by this court, but which is not cited by learned counsel in this case. But it is seriously to be questioned if there is such an analogy between the certainty and strictness required by the doctrine of specific performance and the enforcement of a lien in which a mortgagor, in executing a mortgage, admits at least the fact that he is indebted to the mortgagee, and that in executing the mortgage he intends to create a lien on some of his property. So, without ruling at this time upon this point, or deciding whether the court erred in allowing the amendment, we are of the opinion that the court erred in finally overruling the demurrer to the petition as amended. In the contract it is stated that all of the personal property thereafter listed was "all now on above farm" at the time that the contract was executed, on December 22, 1932. The first payment of $1750 was due, under the contract, on February 1, 1933. The vendor was not to surrender possession of the real estate or deliver possession of the personalty mentioned until that date. At that time there were a certain number of mules, cows, and hogs, but there were not only no marks of identification, as in the *Nichols*

case, supra, but the amendment did not supply this omission. As to the chickens, it can not be told from the contract whether the vendor in this case had 2 chickens or 2000, so as to enable us to determine the intention of the parties. Mrs. Byers may have been in the poultry business; but if there were only 2 chickens, or some other small number, it was not only possible but probable that these chickens might not be on the farm on February 1, 1933. Then there is absolutely no way to determine the quantity of farming tools, corn, hay, and feedstuffs, and the amendment gave no hint as to the quantity of each which was the subject-matter of the bargain. In these circumstances, a decree for specific performance could not be entered explanatory of but strictly confined to the contract made on December 22, 1932, but would have to be based on such quantity of these unmeasured elements as might be testified to have been on the farm on February 1, 1933. Cases involving realty, for which the equitable remedy of specific performance was originally designed, do not admit of such looseness in pleading as is apparent from the petition in this case.

In *Carolee* v. *Handelis*, 103 *Ga.* 299 (29 S. E. 935), this court held: "As a general rule, equity will not decree specific performance of contracts relating to personal property. In order to sustain a bill for the specific performance of such a contract, it is necessary to allege some good reason in equity and good conscience to take the case out of the general rule above stated. In the present case no such reason was alleged or proved." In delivering the opinion of the court Mr. Chief Justice Simmons said: "It will be seen that this was an effort on the part of the plaintiff in error to have specific performance decreed of a contract for the sale of personal property. Section 4036 of the Civil Code declares that 'Specific performance of a contract (if within the power of the party) will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for the non-performance.' As a general rule, a court of equity will not decree specific performance of a contract relating to personal property, for the reason that, generally, in a suit at law for damages, adequate compensation can be awarded for the violation of such contract. Where breach of the contract can not be adequately compensated at law, a court of equity will as readily decree specific performance of a contract relating to personal property as it would if the contract related

to realty. But in order to obtain this aid from a court of equity, where the contract sought to be enforced is one relating to personal property, the plaintiff must show some good reason in equity and good conscience to take the case out of the general rule. He must allege some element or feature of the contract, or in the conduct of the defendant, to show that the relief at law would not be adequate. He may show that in case the contract is not specifically performed his damages will be irreparable, or he may show that the measure of damages resulting from the non-performance of the contract is uncertain or difficult of ascertainment. He may show that the thing contracted for has some intrinsic or special value, such as is possessed by an heirloom, having a special and peculiar value to its owner over and above any market value that can be placed in accordance with strict legal rules; or he may show that the property, though personal, is not of a common class, but is unique of its kind, and can not be readily reproduced, so that others of a similar nature and equal value can not be procured by damages assessed by means of legal rules, as is the case with paintings or other works of art. Pom. Spec. Perf. 14. The petition in the case under consideration does not allege any of these reasons, or any other reason why in equity and good conscience this particular contract should be specifically performed. There is nothing to show that adequate compensation for the violation of the contract could not be awarded in an action at law for damages. . . It is difficult to see how a court of equity could decree specific performance of this contract and compel the defendant to deliver to the plaintiff fruit which was on hand at the time of the tender of the purchase-price, and which if kept would have rotted and decayed months before the decree. It is well settled that a court of equity will not render a decree which is impossible of performance, or which the court has not power to enforce. On the subject above treated, see 22 Am. & Eng. Enc. L. 989 et seq.; Cohn *v.* Mitchell, 115 Ill. 124; Civil Code, § 4038; Fry, Spec. Perf. § 56 et seq.; Cuddee *v.* Rutter, 1 White & L. C. Eq. 907."

In the case at bar it is not alleged that the defendants are insolvent and that damages could not be recovered. It is not alleged that the particular articles to be sold were so unique or peculiar, or heirlooms, as to give them a value in excess of their intrinsic worth. One reason assigned is that the vendor, the defendant in error, had

been put to the expense of engaging another place of residence, and incurred liability for rent for the year 1933; but certainly the amount of damages rests within the knowledge of the defendant in error. As appears from the statement of facts in the *Carolee* case, supra, the parties had been partners in a fruit and confectionery business, and in July, 1895, the plaintiff sold his interest in the business to the defendant for $500, the latter contracting to sell the entire business to the plaintiff at any time in January, 1896, after fifteen days notice, for $100 less than its value; and in January, 1896, the plaintiff gave notice, and an inventory and appraisement were made, and he tendered to the defendant the value of the business, but the defendant, without reason, refused to transfer the business to him. The jury found for the plaintiff, and that he was entitled to specific performance. The defendant moved for a new trial, which was granted, and the plaintiff excepted. The order of the judge (Judge J. H. Lumpkin, afterwards an honored member of this court) in sustaining the motion and granting a new trial, was as follows: "I feel constrained to grant a new trial in this case. I do so on specific grounds, however, and not on general or discretionary grounds. The contract was a sale of an interest in personalty, with an agreement for a resale to the vendor for $100 less than the value of the property to be sold. There was no interest or title [in] the person to whom the resale was to be made. [And the same is true in the case at bar.] Section 3188 of the Code of 1882 [§ 4635, Code of 1910] did not apply. In fact, under a careful review of the case, I am unable to see how specific performance could be granted. A fruit-stand varying in specific merchandise, with no fixed value, is at best a difficult thing to make subject to such decree, certainly unless the defendant were insolvent as to the $100. Plaintiff's counsel announced that he proceeded for specific performance, and desired no instruction to the jury on damages. Suppose the stand etc., at the time of the tender, to have been worth $550, and at the time of the trial the fruit etc. on hand to have been worth $1000; must this be transferred for $550, or must the tender be changed? I put my decision on grounds 12, 13 and 22. These grounds set forth that the court erred in charging the jury in the language of the Civil Code [1895], §§ 4036, 4038 [1910, §§ 4633, 4635], and as follows: 'If a contract is made by one to sell personal property to another, and the person

contracting to sell violates his contract and refuses to make the sale, unless there be additional equitable reasons, specific performance would not be an appropriate remedy, but a suit for damages for a breach of the contract. But if there are good reasons in equity and good conscience why a suit for damages would not give relief, then the plaintiff may proceed for specific performance. Generally, I say, in cases of personal property, the remedy by suit for damages stands in lieu or in place of a proceeding for specific performance; but the principle which I have announced to you, touching when specific performance of a contract will be decreed generally, is applicable; and if it would be a fraud upon the purchaser, and he have no other remedy, the mere fact that the property is personalty would not alone be sufficient to defeat this remedy.' Also, that the court erred in refusing to charge, that under the evidence the case was not one for specific performance, and that the jury should find a verdict for the defendant."

In our opinion that decision is controlling of the principles applicable to specific performance where personalty is involved, and for the reasons which have already been stated the court erred in overruling the demurrer and in not dismissing the petition.

*Judgment reversed. All the Justices concur, except Hill, J., who dissents.*