THOMAS L. CURRAN AND WIFE, JOSEPHINE CURRAN, PLAINTIFFS v. ROBERT M. BAREFOOT, AS TRUSTEE FOR ROBERT M. BAREFOOT REVOCABLE TRUST, DEFENDANT

No. COA06-1102

(Filed 5 June 2007)

**1. Vendor and Purchaser— lake house sale—breach of contract—ready, willing and able purchaser**

The evidence in an action for breach of contract for the sale of a lake house was sufficient to support the trial court's finding that plaintiff purchasers were ready, willing and able to close on the transaction on or within a reasonable time after the scheduled closing date even after defendant vendor repudiated the contract, and this finding supported an order of specific performance, where the contract between the parties did not contain a time-is-of-the-essence clause, and a mortgage broker testified that plaintiffs obtained a loan commitment which would have allowed a loan closing within the week after the scheduled closing date.

**2. Vendor and Purchaser— lake house sale—loan commitment—failure to provide to vendor—not contract breach**

Plaintiff purchasers did not breach a contract with the vendor by failing to provide a copy of their loan commitment letter to the vendor where the vendor failed to request in writing a copy of the commitment letter as required by the contract, and a letter was provided from defendant's mortgage broker upon defendant's oral request.

CURRAN v. BAREFOOT

[183 N.C. App. 331 (2007)]

**3. Vendor and Purchaser— purchase price of house—acceptance of counteroffer**

Competent evidence supported the trial court's finding that a contract provided a definite and certain price of $550,000 for the purchase of a lake house and listed personal property so that the contract supported an order of specific performance where the vendor's real estate agent testified that the vendor made a counteroffer of $550,000 to the purchasers' original offer of $525,000 by marking out the original offer and putting his initials above an amount of $550,000, and that plaintiffs accepted the counteroffer by initializing the change, and defendant acknowledged testifying during his deposition that the purchase price was $550,000.

**4. Specific Performance— contract to convey real and personal property—complete remedy**

The trial court did not err by ordering defendant to specifically perform a contract to convey real and personal property to plaintiffs even though defendant contends specific performance is not an appropriate remedy for contracts involving personal property, because: (1) there are recognized exceptions to the general rule that the remedy for a breach of contract for the sale of personal property is an action at law where damages are awarded; (2) jurisdiction to enforce specific performance rests, not on the distinction between real and personal property, but on the ground that damages at law will not afford a complete remedy; (3) the plain language of the contract, defendant's admissions, and other competent evidence in the record proved defendant intended to convey to plaintiffs a furnished lake house with three watercraft for $550,000; (4) the trial court's judgment ordering specific performance of both real and personal property provided a complete remedy to plaintiffs; and (5) the value of a unitary vacation home to a buyer is the furnished lake house and accessories.

**5. Specific Performance— Rule 60(b) motion—unable to comply with contract—not record owner of watercraft ordered to be conveyed**

The trial court erred by denying defendant's N.C.G.S. § 1A-1, Rule 60(b) motion for relief from judgment in part, and the matter is remanded to the trial court to award plaintiffs money damages for the fair market value of the three watercraft or other appropriate relief if defendant does not or cannot deliver clear

and unencumbered title to the watercraft to plaintiffs at closing, because: (1) extraordinary circumstances exist and justice demands the judgment be modified; (2) defendant moved for relief based on the fact it was not the record owner of the watercraft ordered to be conveyed to plaintiffs, and this evidence was not presented during the bench trial; and (3) the trial court ordered defendant to convey property it did not own, specific performance cannot be granted where the performance of the contract is impossible, and specific performance will not be decreed against a defendant who is unable to comply with the contract even though the inability to perform is caused by defendant's own act.

Appeal by defendant from judgment entered 30 December 2005 and order entered 13 February 2006 by Judge Edwin G. Wilson, Jr., in Montgomery County Superior Court. Heard in the Court of Appeals 24 April 2007.

*Stanley W. West, for plaintiffs-appellees.*

*Mack Sperling and David L. Neal, for defendant-appellant.*

TYSON, Judge.

Robert M. Barefoot, as trustee for the Robert M. Barefoot Revocable Trust, ("defendant") appeals from judgment entered which ordered defendant to specifically perform a contract to convey real and personal property to Thomas L. Curran and Josephine Curran (collectively "plaintiffs"). Defendant also appeals from order entered denying his Rule 59 motion for a new trial and Rule 60(b) motion for relief from judgment. We affirm in part, reverse in part, and remand.

## I. Background

Defendant owns a house ("the lake house") on Lake Tillery in Mt. Gilead, North Carolina. On 19 November 2003, plaintiffs and defendant executed an Offer to Purchase and Contract ("the contract"). Defendant agreed to convey the lake house to plaintiffs. An addendum accompanying the contract listed certain items of personal property defendant agreed to convey with the lake house: (1) "[a]ll furniture, linens, window treatments, appliances, pictures, towels, flatware, dishes, and all other items currently in the [lake] house" except "clothes and personal items;" (2) "[o]ne antique

wardrobe located in an upstairs bedroom;" (3) "[o]ne small table located in [the] downstairs hallway;" and (4) "[a]ll watercraft and accessories." Defendant refused to tender and convey on the scheduled closing date.

On 29 January 2004, plaintiffs filed suit against defendant seeking specific performance of the contract. After a bench trial, the trial court found and concluded as a matter of law: (1) an enforceable contract existed between plaintiffs and defendant; (2) the contract should be reformed to correct draftsman's errors and mutual mistakes of the parties; (3) defendant repudiated the contract in late December 2003, refused to close the transaction, and breached the contract; (4) the subject real property is unique such that money damages are not an adequate remedy; and (5) plaintiffs are entitled to specific performance of their contract with defendant for conveyance of the subject real property and the associated personal property listed in the addendum, including watercraft. The trial court entered judgment on 30 December 2005.

On 9 January 2006, defendant moved for relief from the trial court's 30 December 2005 judgment, or alternatively for a new trial. The trial court denied defendant's motions on 13 February 2006. Defendant appeals from the judgment and this order.

## II. Issues

Defendant argues the trial court erred by granting plaintiffs specific performance of the contract because: (1) there was no evidence plaintiffs were ready, willing, and able to consummate the transaction; (2) the contract was unclear, incomplete, inconsistent, and ambiguous; and (3) specific performance is not an appropriate remedy for contracts involving personal property. Defendant also argues the trial court erred by denying his Rule 60(b) motion for relief from judgment and asserts it does not own the three watercraft ordered to be transferred to plaintiffs.

## III. Specific Performance

### A. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (quoting *Sessler v. Marsh*,

144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001)), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002).

"The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Resort Realty of the Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 116, 593 S.E.2d 404, 408, *appeal dismissed and disc. rev. denied*, 358 N.C. 236, 595 S.E.2d 154 (2004). "When competent evidence supports the trial court's findings of fact and the findings of fact support its conclusions of law, the judgment should be affirmed in the absence of an error of law." *Id.* The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo. Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

## B. Ready, Willing, and Able

[1] Defendant argues the trial court erred by granting plaintiffs specific performance of the contract and asserts no evidence shows plaintiffs were ready, willing, and able to consummate the transaction. Defendant also argues the evidence shows plaintiffs were not ready, willing, and able to consummate the transaction after it repudiated the contract. We disagree.

Our Supreme Court has stated:

> The remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the court. The party claiming the right to specific performance must show the existence of a valid contract, its terms, and either full performance on his part *or that he is ready, willing and able to perform.*

*Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981) (internal quotation and citations omitted). This Court has stated:

> Plaintiff's offer to perform does not have to be shown where defendant refused to honor or repudiates the contract. . . . As long as plaintiff is able, ready, and willing to perform the conditions of the contract remaining to be performed, he will not be barred from relief[.]

*Mizell v. Greensboro Jaycees*, 105 N.C. App. 284, 289, 412 S.E.2d 904, 908 (1992) (internal citations and quotation omitted).

The contract set the closing date as 31 December 2003. On 23 December 2003, defendant's counsel, J. Nathan Duggins, III, Esq., sent a letter to defendant's real estate agent David Whitley ("Whitley"). The letter stated, "[T]he Offer to Purchase and Contract . . . dated November 19, 2003 is terminated[.] . . . [Defendant] will not appear at any closing with regard to [the lake house][.]" Plaintiffs learned of the existence of this letter which repudiated the contract on 29 December 2003.

In its judgment, the trial court found as fact:

9. Prior to being advised of the letter from Defendant's attorney of 12/23/2003, the Plaintiffs were proceeding towards closing and could have closed either on 12/31/2003 or within a reasonable time thereafter.

10. At all relevant times, Plaintiffs continue to be ready, willing, and able to close on (sic) purchase of the subject real estate and related personal property, on reasonable notice to do so.

Although defendant assigned error to these findings of fact, they "are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Resort Realty of the Outer Banks, Inc.*, 163 N.C. App. at 116, 593 S.E.2d at 408.

Competent evidence supports the trial court's findings of fact. Thomas L. Curran ("Thomas") testified in early December 2003, plaintiffs contracted for a home inspection and an appraisal to be performed on the lake house. Plaintiffs also met with defendant and discussed which items of furniture and other personal property defendant wanted to leave or remove prior to closing.

Plaintiffs also presented the testimony of Francis Poutier ("Poutier"), their mortgage broker. Poutier qualified as an expert witness and testified: (1) Thomas contacted him on 8 December 2003 about obtaining a mortgage loan to purchase the lake house by the end of the year; (2) after receiving information back from lenders, it did not appear there would be a problem getting a mortgage loan approved; (3) plaintiffs obtained a loan commitment letter with certain contingencies from Washington Mutual on 16 December 2003; (4) plaintiffs declined the Washington Mutual loan; (5) he began the process of obtaining a mortgage loan from Alterna Mortgage; and (6) if plaintiffs had telephoned him at the end of 2003 and stated the closing was on for approximately the first week of January 2004, Alterna was "on board for a closing."

CURRAN v. BAREFOOT

[183 N.C. App. 331 (2007)]

On 23 December 2003, Poutier wrote a letter to Whitley, defendant's real estate agent. The letter stated:

> [Plaintiffs] are in the process of being approved for a mortgage loan for the purchase of [the lake house].

> Currently the lender is clearing several stipulations for final approval. Current anticipated closing date remains 31 December 2003. However, due to the holiday schedules, and unanticipated work loads at the underwriting level, please anticipate possible slippage in closing to on or about 6 January, 2004. Please understand best efforts are being made to maintain contract schedule.

Competent evidence supports the trial court's finding that plaintiffs were ready, willing, and able to close on the purchase of the lake house upon reasonable notice even after defendant's repudiation.

The contract between the parties does not contain a time-is-of-the-essence clause. "It is well settled that absent a time-is-of-the-essence clause, North Carolina law 'generally allows the parties [to a realty purchase agreement] a reasonable time after the date set for closing to complete performance.'" *Dishner Developers, Inc. v. Brown*, 145 N.C. App. 375, 378, 549 S.E.2d 904, 906 (quoting *Fletcher v. Jones*, 314 N.C. 389, 393, 333 S.E.2d 731, 734 (1985)), *aff'd*, 354 N.C. 569, 557 S.E.2d 528 (2001). Competent evidence shows plaintiffs were financially able to close the transaction on or within a reasonable time after the scheduled 31 December 2003 closing date. This assignment of error is overruled.

[2] Defendant also argues plaintiffs breached the contract by failing to secure a firm loan commitment. Plaintiffs real estate agent, Colburn Thompson ("Thompson") testified he received a telephone call "from somebody shortly before Christmas . . . inquir[ing] into [plaintiffs'] loan or amount[.]" Thompson responded to this inquiry by faxing Poutier's letter. Defendant asserts this letter was not a loan commitment letter and plaintiffs breached the contract. We disagree.

Paragraph 5(a) of the Offer to Purchase and Contract provides, in relevant part, "Seller may request *in writing* from Buyer a copy of the loan commitment letter. If Buyer fails to provide Seller a copy of the loan commitment letter . . . , Seller may terminate this contract by written notice to Buyer at any time thereafter." (Emphasis supplied).

Competent evidence supports the trial court's finding of fact that plaintiffs stood ready, willing, and able to close the transaction. The

express terms of the contract require the seller to request in writing a copy of the buyer's loan commitment letter. Defendant, as seller, failed to request in writing a copy of plaintiffs' loan commitment letter. Also, competent evidence shows defendant was provided a copy of Poutier's letter upon their oral request. Plaintiffs did not breach the contract with defendant. This assignment of error is overruled.

## C. The Offer to Purchase

**[3]** Defendant argues the trial court erred by granting plaintiffs specific performance of the contract because the price was unclear, incomplete, inconsistent, and ambiguous. We disagree.

"The party claiming the right to specific performance must show the existence of a valid contract [and] its terms[.]" *Munchak Corp.*, 301 N.C. at 694, 273 S.E.2d at 285. "Specific performance will not be decreed unless the terms of the contract are so definite and certain that the acts to be performed can be ascertained and the court can determine whether or not the performance rendered is in accord with the contractual duty assumed." *N.C. Med. Soc'y v. N.C. Bd. of Nursing*, 169 N.C. App. 1, 11, 610 S.E.2d 722, 727-28 (internal quotation and citation omitted), *disc. rev. denied*, 360 N.C. 66, 621 S.E.2d 875 (2005).

In its judgment, the trial court found as fact:

5. The parties mutually assented to a purchase price of the real estate and property described in the Addendum for the total sum of $550,000.00, as indicated on line 4 of the Contract, where Plaintiffs and Defendant initialed the change of purchase price to $550,000.00. The Plaintiffs had originally offered $525,000.00 and Defendant countered with $550,000.00, which counter offer was accepted by Plaintiffs.

Although defendant has assigned error to this finding of fact, it is "binding on appeal as long as competent evidence supports [it], *despite the existence of evidence to the contrary.*" *Resort Realty of the Outer Banks, Inc.*, 163 N.C. App. at 116, 593 S.E.2d at 408 (emphasis supplied).

Competent evidence supports the trial court's finding of fact. Thomas testified plaintiffs: (1) made an initial offer of $525,000.00; (2) gave the initial offer to their real estate agent, Thompson; (3) heard from Thompson that defendant had counter offered to sell for $550,000.00; (4) saw that on the contract $525,000.00 was crossed out

and $550,000.00 was added with what appeared to be defendant's initials above the change; and (5) accepted defendant's counteroffer by initialing the change.

Phyllis Dunn ("Dunn"), defendant's real estate agent who wrote the lake house listing, testified defendant responded to plaintiffs original offer with a counteroffer of $550,000.00. Dunn stated defendant made the counteroffer, "because he initialed it."

During defendant's testimony, he acknowledged to testifying during his deposition that the purchase price was $550,000.00. Defendant was asked, "So your understanding, [defendant], was that as of the time y'all entered into this contract that the [plaintiffs] had agreed to pay you $550,000.00 for the house and for all the contents except for . . . three items . . . , is that correct?" Defendant answered, "Yeah."

Competent evidence supports the trial court's finding that the parties mutually agreed to the purchase price of $550,000.00 for the lake house and the listed personal property. The trial court's finding of fact is "binding on appeal . . . despite the existence of evidence to the contrary." *Resort Realty of the Outer Banks, Inc.*, 163 N.C. App. at 116, 593 S.E.2d at 408. The purchase price in the contract was "definite and certain." *N.C. Med. Soc'y*, 169 N.C. App. at 11, 610 S.E.2d at 728. This assignment of error is overruled.

### D. Personal Property

**[4]** Defendant argues the trial court erred by granting plaintiffs specific performance of all terms of the contract. Defendant asserts specific performance is not an appropriate remedy for contracts involving personal property. We disagree.

### 1. Personal Property Included in the Contract

The trial court concluded plaintiffs were entitled to specific performance of the entire contract which included: (1) the lake house; (2) the listed fixtures under paragraph two of the contract; (3) "[a]ll furniture, linens, window treatments, appliances, pictures, towels, flatware, dishes, and all other items currently in the [lake] house" except "clothes and personal items;" (4) "[o]ne antique wardrobe located in an upstairs bedroom;" (5) "[o]ne small table located in [the] downstairs hallway;" and (6) "[a]ll watercraft and accessories."

Competent evidence shows the parties agreed that this personal property was to be conveyed by defendant to plaintiffs as part and parcel of the sale of the lake house. Defendant's original listing agree-

ment for the lake house and contents was drafted by defendant's own real estate agent and states, "The following personal property is included in the listing price: All furniture, boats."

Dunn, defendant's real estate agent, testified: (1) after the contract was signed, defendant threatened to back out of the deal; (2) defendant came by her office one day and stated, "I've been thinking about it and if you guys would agree not to take a commission on the personal property then I would probably go with this offer;" and (3) defendant, plaintiffs' real estate agent Thompson, and Dunn negotiated a $3,000.00 reduction in the broker's commissions representing six percent of the $50,000.00 value defendant attributed to the personal property to be conveyed. Defendant also agreed "the deal on the [lake] house from the beginning" included all furniture with the few exceptions noted above and three watercraft. The trial court found and concluded the personal property ordered was to be conveyed by defendant to plaintiffs was a part and parcel of and served as consideration for the contract.

"As a general rule, the remedy for a breach of contract for the sale of personal property is an action at law, where damages are awarded." *Bell v. Concrete Products, Inc.*, 263 N.C. 389, 390, 139 S.E.2d 629, 630 (1965). However, our Supreme Court has stated "there are recognized exceptions." *Trust Co. v. Webb*, 206 N.C. 247, 250, 173 S.E. 598, 600 (1934). "Jurisdiction to enforce specific performance rests, not on the distinction between real and personal property, but on the ground that damages at law will not afford a complete remedy." *Id.* (citing *Paddock v. Davenport*, 107 N.C. 710, 12 S.E. 464 (1890); *Tobacco Association v. Battle*, 187 N.C. 260, 121 S.E. 629 (1924)).

Here, the plain language of the contract, defendant's admissions, and other competent evidence in the record clearly proves defendant intended to convey to plaintiffs a furnished lake house with three watercraft for $550,000.00. The trial court's judgment ordering specific performance of both the real and personal property provides "a complete remedy" to plaintiffs. *Id.* The trial court did not err as a matter of law by awarding plaintiffs specific performance of a sales contract for the purchase of the real property, that included incidental personal property, as a consideration for and part of the conveyance.

### 2. Other Jurisdictions

Other state jurisdictions have held specific performance may be granted for breach of a contract to sell real property that includes

personal property. "Where part of an entire contract relates to ordinary personal property and the rest to a subject matter, such as land, over which equity jurisdiction is commonly exercised, specific performance may be had of the whole contract, including the part that relates to personal property." *Taylor v. Highland Park Corp.*, 210 S.C. 254, 261, 42 S.E.2d 335, 338 (S.C. 1947) (internal citations omitted); *Kipp v. Laun*, 146 Wis. 591, 603, 131 N.W. 418, 422 (Wis. 1911); *Roberts v. Hummel*, 69 Nev. 154, 163, 243 P.2d 248, 252 (Nev. 1952); *see Henderson v. Fisher*, 236 Cal. App. 2d 468, 473, 46 Cal. Rptr. 173, 177 (Cal. App. 1 Dist. 1965) ("Where . . . only part of the subject matter of the contract consists of land, specific performance of the whole of the contract may be decreed even though compensation in money would be an adequate remedy for the promisor's failure to perform that part of the contract calling for the transfer of ordinary chattels.").

The Supreme Court of Georgia has followed the general rule that:

[E]quity will not decree specific performance of contracts relating to personal property. In order to sustain a bill for the specific performance of such a contract, it is necessary to allege some good reason in equity and good conscience to take the case out of the general rule above stated.

*Black v. American Vending Co.*, 239 Ga. 632, 633-34, 238 S.E.2d 420, 421 (Ga. 1977) (quotation omitted).

The Supreme Court of Georgia considered a case concerning specific performance of a contract involving both real and personal property in *Gabrell v. Byers*, 178 Ga. 16, 172 S.E. 227 (Ga. 1933). A property owner had contracted to sell her farmland, along with all personal property located thereon, for a lump sum. *Id.* at 16-17, 172 S.E. at 228. The contract specifically listed all the personal property including livestock, six mules, farm equipment, and vehicles. *Id.* at 17, 172 S.E. at 228. When the purchaser failed to make the first payment, the seller sued and sought specific performance. *Id.* at 17-18, 172 S.E. at 228. The court stated:

As a general rule, the remedy of a decree for specific performance relates only to real estate, and is not applicable to personalty. So the cardinal rules which apply to the remedy of specific performance are applied with greater strictness where personalty is concerned than where realty is involved. *In the case at bar the contract, including both real estate and various species of personal*

CURRAN v. BAREFOOT

[183 N.C. App. 331 (2007)]

*property, is entire and indivisible, so far as the remedy by decree for specific performance is concerned.*

*Id.* at 18, 172 S.E. at 228-29 (emphasis supplied).

The Supreme Court of Georgia in *Gabrell* relied heavily on *Carolee v. Handelis*, 103 Ga. 299, 29 S.E. 935 (Ga. 1898), which also concerned specific performance of a contract involving personal property: the sale of real property containing a fruit stand. The court noted that the merchandise was perishable and to not order specific performance would have allowed for destruction of the merchandise. *Carolee*, 103 Ga. at 302, 29 S.E. at 937.

In its analysis of *Carolee*, the court in *Gabrell* quoted with approval that opinion's requirement that *"the plaintiff must show some good reason in equity and good conscience to take the case out of the general rule.* He must allege some element or feature of the contract or in the conduct of the defendant to show that the relief at law would not be adequate." *Gabrell*, 178 Ga. at 21, 172 S.E. at 229-30 (emphasis supplied). A party can prove inadequate relief at law by showing: (1) irreparable damages will result without specific performance; (2) damages will be uncertain or difficult to ascertain; (3) the property "has some intrinsic or special value, such as . . . an heirloom, having a special and peculiar value to its owner over and above any market value that can be placed in accordance with strict legal rules;" or (4) the property is unique and not easily reproduced, as with works of art. *Id.* at 21, 172 S.E. at 230.

Nearly thirty years after *Gabrell*, the Supreme Court of Georgia restated its holding in a case involving a lease of real and personal property:

> The agreement in this case is entire. It involves both real and personal property, and stipulates one purchase price for the property as a whole. There is no price established for the personalty alone, or for the real estate. The entire agreement must be enforced with respect to both kinds of property, or it will fall.

*Irwin v. Dailey*, 216 Ga. 630, 638, 118 S.E.2d 827, 833 (Ga. 1961).

The value of a unitary vacation home to a buyer is the furnished lake house and accessories. This value is similar to the value to a buyer of a working farm including the farmland, livestock, and implements. Just as the farmland in the case above would be much less desirable if the items of livestock and implements were not conveyed,

a barren lake house without the personal property listed in the contract would not provide plaintiffs a "complete remedy." *Trust Co.*, 206 N.C. at 250, 173 S.E. at 600.

The trial court did not err as a matter of law by awarding plaintiffs specific performance of a contract involving real property and incidental personal property to be conveyed part and parcel therewith as a unit. This assignment of error is overruled.

## IV. Rule 60(b) Motion

[5] Defendant argues the trial court erred by denying his motion for relief from the judgment pursuant to N.C. Gen. Stat. 1A-1, Rule 60(b)(6) (2005). We agree.

After the trial and entry of the judgment, defendant moved for relief from the judgment solely on the basis it was, and is, not the record owner of the watercraft ordered to be conveyed to plaintiffs. In support of its motion, defendant relied upon the Affidavit of Quint Barefoot ("Quint"), the trustee's son, in which Quint states the three watercraft are not owned by defendant. Defendant also submitted purchase agreements and a registration card as evidence that it does not own the three watercraft. This evidence was not presented during the bench trial from which the trial court's judgment was entered.

"The test for whether a judgment, order or proceeding should be modified or set aside under Rule 60(b)(6) is two pronged: (1) extraordinary circumstances must exist, and (2) there must be a showing that justice demands that relief be granted." *Howell v. Howell*, 321 N.C. 87, 91, 361 S.E.2d 585, 588 (1987).

Here, "extraordinary circumstances exist" and "justice demands" the judgment be modified. *Id.* The trial court ordered defendant to convey personal property it did not own. "Specific performance may not be granted where the performance of the contract is impossible" and "specific performance will not be decreed against a defendant who is unable to comply with the contract even though the inability to perform is caused by the defendant's own act." *Hong v. George Goodyear Co.*, 63 N.C. App. 741, 743-44, 306 S.E.2d 157, 159 (1983).

The trial court erred by denying defendant's motion for relief from the judgment in part. The matter is remanded to the trial court to award plaintiffs money damages for the fair market value of the three watercraft or other appropriate relief, if defendant does not or

IN RE D.C., C.C.

[183 N.C. App. 344 (2007)]

cannot deliver clear and unencumbered title of the watercraft to plaintiffs at closing.

## V. Conclusion

The trial court did not err by granting plaintiffs specific performance of their contract with defendant. Competent evidence supports the trial court's finding that plaintiffs were ready, willing, and able to consummate the transaction. Competent evidence also supports the trial court's finding that plaintiffs and defendant mutually agreed to the purchase price of $550,000.00. The trial court did not err as a matter of law in awarding specific performance of a contract involving both real and personal property.

The trial court erred by denying defendant's motion for relief from the judgment in part. N.C. Gen. Stat. 1A-1, Rule 60(b)(6). Defendant was not, and is not, the record owner of the three watercraft ordered to be transferred to plaintiffs. The matter is remanded to the trial court to award plaintiffs money damages for the fair market value of the three watercraft or other appropriate relief, if defendant does not, or cannot, deliver clear and unencumbered title of the watercraft to plaintiffs at closing.

Affirmed in part, Reversed in part, and Remanded.

Judges HUNTER and CALABRIA concur.